UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE PERKINS, ON BEHALF OF
HERSELF AND THOSE SIMILARLY
SITUATED,

        Plaintiffs,

v.

BENORE LOGISTICS SYSTEMS, INC.,

        Defendant.
_____/

Case No. 16-13717

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER DENYING DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [8]**

Before the Court is Defendant Benore Logistic's Motion for Temporary Restraining Order and Preliminary Injunction [8]. The Court has considered the parties' submissions and finds the motion suitable for determination without oral argument pursuant to Local Rule 7.1(f)(2).

For the reasons that follow, the Court will **DENY** Defendant's Motion for Temporary Restraining Order and Preliminary Injunction [8]. However, because both parties agree that removal of the link to the Getman & Sweeney[1] website would cure any issues with the witness communications moving forward, Plaintiff's counsel is hereby ordered to remove the link to Getman & Sweeney website from all future emails and/or messages sent to putative class members.

---

[1] Getman & Sweeney, PLLC is the firm at which Plaintiff's counsel works.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Stephanie Perkins has been employed by Defendant Benore Logistic, Inc., an interstate shipping and freight corporation, in South Carolina since January 2014. She currently works as a Transportation Coordinator ("TC") and is responsible for communicating with truck drivers regarding their schedules, routes, trucks, and equipment, and reporting operational issues to supervisory staff. She claims that Benore Logistic violated the collective action provision of the Fair Labor Standards Act ("FLSA"), set forth at 29 U.S.C. § 216(b), when it failed to give overtime premium pay at the rate of a time and one-half of the regular rate for all hours worked over 40 in a workweek to herself and a nationwide class of transportation coordinators. Plaintiff filed her Complaint [1] on October 19, 2016, alleging violations of the FLSA and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq*. She seeks class certification, declaratory relief, equitable and injunctive relief, unpaid wages, and liquidated damages.

Benore filed its Motion for Temporary Restraining Order and Preliminary Injunction [8] on December 16, 2016. It seeks an interim order restraining Plaintiff's counsel from communicating *ex parte* with its employees, putative members of the class action. Benore claims that several of its employees expressed concern after they received emails from Plaintiff's counsel regarding this lawsuit. The emails at issue state as follows:

> Dear [Employee Name]:
>
> Getman & Sweeney, PLLC has brought a case seeking to recover back overtime wages for Transportation Coordinators who worked for Benore Logistic Systems, Inc. We understand that you worked for the company and would like to talk to you about its practices. If you are willing to help, please either respond to this email or call Misty Emerick at Getman & Sweeney – (845) 255-9370. You can find out more about the case and Getman & Sweeney, PLLC on our website: http://getmansweeney.com/current-cases/benore-logistic-systems
>
> Thank you.
> Mike Sweeney

(Dkt. 8-2, Pg. ID 75).

The link provided in the email leads to the Getman & Sweeney website, on which there is a description of this lawsuit and a link to a "Consent to Sue" form. (Dkt. 8-2, Pg. ID 77-79). If an employee felt inclined to explore the firm's website further – by clicking on the "Home" tab in the top left corner, for example – she would see the following statement on the firm's homepage:

> Getman Sweeney represents employees working through the U.S. We regularly sue multinational and Fortune 500 companies. We are proud to have recovered tens of millions of dollars in pay wrongfully taken from employees.

*Id.*

An employee could also find additional information about the firm by clicking on the "Current Cases" and "Investigations" tabs located at the top of the page.

Benore believes that the email sent by Plaintiff's counsel is improper for several reasons. First, the Court has not certified a class. Second, the email – and the link to the firm website contained therein – constitute misleading statements and material misrepresentations in violation of Michigan Rule of Professional Conduct ("MRPC") 7.1(a). Benore also asserts that Plaintiff's counsel's actions violate MRPC 7.1(b) because they create an unjustified expectation.

In her Response [11] filed on December 20, 2016, Plaintiff acknowledges that her counsel reached out to potential witnesses via LinkedIn and Facebook for information regarding Defendant's pay practices. (Dkt. 11-1). She states that counsel only sent four LinkedIn emails on or before December 8, 2016, and that the Facebook post was active between October 26 and November 30, 2016. *Id.* at ¶ 5, 6. Furthermore, counsel has taken no additional steps to communicate with potential witnesses since December 8, 2016, and is unaware of anyone who responded to previous messages. *Id.* at ¶ 7, 8. Plaintiff's counsel is also willing to alter the content of future messages and proposed removing the link to the firm's website from emails sent to potential witnesses.

### STANDARD OF REVIEW

District courts have broad discretion under Federal Rule of Civil Procedure 23 to issue appropriate orders governing the conduct of counsel and the parties. *Hoffman – La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989). The "primary

purpose in supervising communications is . . . to ensure that potential [class] members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (citing *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)). The Court's supervisory authority exists even prior to class certification. *Tolmasoff v. GM, LLC*, No. 16-11747, 2016 U.S. Dist. LEXIS 85101, at *30 (E.D. Mich. June 30, 2016) (Steeh, J.).

"Because the source of the Court's authority to enjoin abusive communications is Rule 23(d) rather than Rule 65 (governing preliminary injunctions and restraining orders), a party does not have to establish the four preliminary-injunction factors to obtain such an injunction." *Id.* at *31 (citing *Kleiner*, 751 F.2d at 1201). The court's discretion to enter an order restricting communications with putative class members "is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules," and by the First Amendment. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Such an order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "The moving party must demonstrate that the actual or anticipated communications are or will be 'abusive in that [they] threaten the proper functioning of the litigation.'" *Tolmasoff*, 2016 U.S. Dist. LEXIS 85101, at

*32 (quoting *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (internal quotations omitted)). Generally, courts should refrain from interfering "with any party's ability to communicate freely with putative class members unless there is a specific reason to believe that such interference is necessary." *Austen v. Catterton Partners*, 831 F. Supp. 2d 559, 567 (D. Conn. 2011). "Intervention is warranted . . . where such communications are found to be misleading or coercive, as such communication poses 'a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice.'" *Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12-529S, 2012 U.S. Dist. LEXIS 144722, at *8 (W.D.N.Y. Oct. 5, 2012) (quoting *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988)). Examples of potential abuses associated with intra-class communications include: "(1) the susceptibility of nonparty class members to solicitation amounting to barratry, (2) the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding, and (3) unapproved communications to class members that misrepresent the status or effect of the pending action." *Williams v. U.S. Dist. Court*, 658 F.2d 430, 436 (6th Cir. 1981).

The Court must also consider that, "by limiting speech . . . orders [restraining communication] can interfere with counsels' ability to defend or prosecute their case." *Doe v. Mich. Dep't of Corr.*, No. 13-14356, 2014 U.S. Dist. LEXIS 105222, at *13 (E.D. Mich. Aug. 1, 2014) (Cleland, J.). Therefore, the

Court must take care to create an "order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co.*, 452 U.S. at 102.

## ANALYSIS

Defendant relies heavily on *Kleiner* to argue that the Court should enter an interim order restraining Plaintiff's counsel from further *ex parte* communications with potential class members. The *Kleiner* defendants – a bank and several bank officials – behaved egregiously in an effort to "reduc[e] [their] potential liability and quell[] the adverse publicity the lawsuit had spawned." *Kleiner*, 751 F.2d at 1197. After the judge approved the class notice, the defendants embarked on a telephone campaign to encourage the bank's customers (and putative class members) to opt out of joining the class. Defense counsel characterized the plan as "an extraordinary move likely to provoke the wrath of the court." *Id.* "Secrecy and haste shrouded the undertaking" and "[n]either the court nor opposing counsel were alerted . . ." *Id.* The bank's president ordered bank employees "to telephone the customers they knew best . . . [and] to do the best selling job they had ever done." *Id.* at 1198 (internal quotations omitted). The marketing director responsible for overseeing the solicitation efforts gave to employees "computer lists of customers marked Friend and Foe as well as score sheets lined with columns for tallying opt-out commitments and the dollar amounts of the corresponding loans."

*Id.* The employees communicating with potential plaintiffs knew little about the facts or the issues in the lawsuit. Ultimately, the defendants convinced nearly 2,800 people to exclude themselves, resulting in "opt-out commitments from customers representing a sum total of $694,997,218 in past or present loans." *Id.*

When the judge learned about defendants' scheme, she cited defense counsel and his firm for contempt and declared the solicitation campaign illegal, finding that the attorneys "had rendered advice in bad faith and had knowingly taken part in the illegal opt-out campaign." *Id.* at 1198-99. The judge also imposed a $50,000 fine on defense counsel and his firm.

The Eleventh Circuit panel acknowledged that "[a] unilateral communications scheme . . . is rife with potential for coercion[,] [especially] [i]f the class and the class opponent are involved in an ongoing business relationship . . ." *Id.* at 1202. The court found that defendants' scheme was particularly coercive because "[t]he class consisted of Bank borrowers, many of whom were dependent on the Bank for future financing." *Id*. The customers affected by the litigation included "those who anticipated seeking . . . new loans, extension of lines of credit . . . and who did not have convenient access to other credit sources." *Id.* (internal citations omitted). Furthermore, the court said, defendants' actions "obstructed the district court in the discharge of its duty to 'protect both the absent class and the

integrity of the judicial process by monitoring the actions before.'" *Id.* at 1203 (quoting *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331 (1980)).

This case is clearly distinguishable from *Kleiner*. An order enjoining Plaintiff from communicating with putative class members would be improper and potentially violate the First Amendment. Plaintiff's counsel has not engaged in the type of "subterfuge and subversion" that constitutes "an intolerable affront to the authority of the district court to police class member contacts." *Kleiner*, 751 F.2d at 1203. The emails at issue simply inform the recipient of the sender's identity and the purpose of the communication, and give the recipient the opportunity to learn more about the case if she so chooses. The emails are in no way suggestive or threatening; if the employee is willing to speak with someone at Getman & Sweeney, she has the option to do so. Moreover, the emails contain nothing that is misleading regarding the litigation, nor do they "misrepresent the status or effect of the pending action [or] coerce prospective class members into excluding themselves from the litigation . . ." *Jones*, 250 F.R.D. at 561.

Defendant also takes issue with the inclusion of the link to the Getman & Sweeney website. Although the link in the email leads to a webpage that provides information only as to this specific litigation, Defendant argues that "[i]t is ludicrous to think that putative plaintiffs will not view other pages of the website that include the same misleading statements." (Def.'s Reply Br. 2). That may be

true, but even without the link, there is nothing preventing a putative plaintiff from searching "Getman & Sweeney, PLLC" on the Internet, and learning the information that way. Furthermore, an employee browsing the website would have to spend considerable time looking for the information that Defendant has cherry picked and included in its brief. The statement about the $6.25 million dollar settlement, for instance, is buried at the end of the paragraph about the firm's investigations of mortgage originators, located toward the bottom of the "Current Investigations" page. There are 29 sizeable paragraphs on that page, all of which explain the firm's involvement in wage cases in a variety of industries. *See Current Investigations*, GETMAN SWEENEY, http://getmansweeney.com/investigations-2. It is not as though the statement about the $6.25 million dollar statement – or any other allegedly problematic statement – is positioned in large, bold, colorful letters at the top of the page. The communications about which Defendant complains do not rise to the level of threatening the legitimacy of this litigation. *See in re School Asbestos Litig.*, 842 F.2d at 680.

It is also worth noting that First Amendment protections apply to attorney advertising as a form of commercial speech. *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977) (advertising by attorneys may be regulated, but "may not be subjected to blanket suppression."). "[I]nsofar as [lawyer] advertising tend[s] to acquaint persons with

their legal rights who might otherwise be shut off from effective access to the legal system, it [is] undoubtedly more valuable than many other forms of advertising." *Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 646 (1985). Attorney advertisements may include verifiable facts about the results of an attorney's past work. *See Public Citizen, Inc. v. La. Atty. Disciplinary Bd.*, 632 F.3d 212, 221 (5th Cir. 2011) (statements "that a lawyer has tried 50 cases to a verdict, obtained a $1 million settlement, or procured a settlement for 90% of his clients" were permissible because these were "objective, verifiable facts regarding the attorney's past professional work."); *Zauderer*, 471 U.S. at 647-49 ("An attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal rights of potential clients."). "Even if, as [Defendant] argues, the prohibited speech has the potential for fostering unrealistic expectations in consumers, the First Amendment does not tolerate speech restrictions that are based only on a 'fear that people would make bad decisions if given truthful information.'" *Public Citizen, Inc.*, 632 F.3d at 222 (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 359 (2002)).

In sum, there is nothing misleading or problematic about counsel's communications to putative class members. It would be improper at this time for

the Court to exercise its authority under Rule 23(d), as the emails were neither coercive nor misleading.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Temporary Restraining Order and Preliminary Injunction [8] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's counsel will remove the link to the Getman & Sweeney website from all future communications with putative class members.

**SO ORDERED**.

                                              s/Arthur J. Tarnow
                                              Arthur J. Tarnow
Dated: February 2, 2017             Senior United States District Judge